UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| KATHERINE JONES, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 06-408-DCR |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| MONUMENTAL LIFE INSURANCE ) | **AND ORDER** |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Plaintiff Katherine Jones' Motion for Summary Judgment. [Record No. 16] Having reviewed the parties' briefs and the applicable law, the Court finds that there are genuine issues of material fact that preclude summary judgment. Therefore, the Plaintiff's motion will be denied.

**I.  BACKGROUND**

This action concerns a life insurance policy issued to the Plaintiff's son, James Jones ("James"), by Defendant Monumental Life Insurance Company ("Monumental"), with the Plaintiff as the named beneficiary. On February 10, 2003, James completed and signed the application for the subject policy with the assistance of Monumental's agent, Sue Smith ("Smith"). Almost two years later, on January 31, 2005, James died at 23 years' of age from acute cardiac arrest as a consequence of a myocardial infarction.

It is undisputed that the Plaintiff paid all the premiums as they became due on the policy. However, upon receiving notice of James' death, Monumental contends that they performed a "routine review" of the policy under the two-year contestability clause. During this review, Monumental discovered that James had failed to include information on his application concerning a hospital stay for psychiatric treatment from January 2, 2003, to February 7, 2003. As a result, Monumental issued a letter informing the Plaintiff that it was rescinding the policy and refunding her premiums.

Monumental contends that it is not required to pay the benefits on the policy because it would have denied coverage if the information concerning the January 2003, hospitalization had been disclosed. More specifically, Monumental states that,

> [t]o clarify our position, James would not have qualified for coverage under policy MM4439305 if we had known of his history of schizophrenia. Specifically, James was hospitalized at ARH Psychiatric Center from 01/02/03 to 02/07/03 due to his mental illness. . . .
>
> Our Underwriters reviewed James' medical history and confirmed that if he had disclosed this information on his application for policy MM4439305, he would not have been accepted for insurance coverage and his application would have bee [sic] declined.

[Record No. 17, p. 11, Ex. 4, July 28, 2005 letter]

In her complaint and motion for summary judgment, the Plaintiff contends that James did not have schizophrenia, that Monumental's agent had knowledge of James' hospital stay, and that Monumental acted in bad faith in denying the benefits. According to the Plaintiff, Sue Smith was a family friend and was fully aware of James' hospitalization in 2003. Additionally,

the Plaintiff contends that, contrary to Monumental's statements, this hospitalization did not result in a diagnosis of schizophrenia.

The facts surrounding the filling-out of the application on February 10, 2003, are sharply in dispute. The Plaintiff claims that Smith filled-out the application on a computer, coached James as to his answers, and did not give him the application to review prior to having him sign a separate document. However, Smith claims that neither the Plaintiff nor James informed her of the January 2003, hospitalization. Additionally, Smith states that James provided all responses to the questions and that she recorded "each and every response exactly as it was provided." She also claims that James did review the policy at the time he signed it. [Record No. 17, Ex. 6, p. 1-2]

The parties further disagree regarding whether James had a "history of schizophrenia" which allegedly made him uninsurable. Monumental asserts that James was hospitalized for schizophrenia in January 2003, but the Plaintiff claims that a diagnosis of schizophrenia was never made. The medical records submitted by Monumental from the relevant period of hospitalization do not show a diagnosis of schizophrenia. [*See* Record No. 17, Ex. 5] In fact, the only reference contained in those medical records appears to rule out schizophrenia, as it states "MDD with psychosis (rule out schizoaffective disorder)." [*See id.*]

The Plaintiff initially filed her complaint in the Clay Circuit Court, seeking recovery on James' life insurance policy, as well as bad faith and punitive damages. On September 6, 2006, Monumental removed the action to this Court based on diversity jurisdiction pursuant to 28

U.S.C. § 1332 and 28 U.S.C. § 1441. Thereafter, on February 23, 2007, the Plaintiff filed the instant Motion for Summary Judgment. [Record No. 16]

## II.      LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 983 (E.D.Ky. 1993). Once a moving party has met its burden of production, "'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, 477 U.S. at 324.

In reviewing a party's motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate whenever that non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 251-52.).

### III. ANALYSIS

The Plaintiff contends that she is entitled to summary judgment because James was insurable and because Monumental acted in bad faith in denying coverage. In support of her motion, the Plaintiff relies entirely on the Sixth Circuit's decision in *Estate of Riddle v. Southern Farm Bureau Life Insurance Co.*, 421 F.3d 400 (6th Cir. 2005), as well as several medical definitions which appear to have been obtained from an online search engine. In response, Monumental contends that James was not insurable and that it did not act in bad faith in denying coverage. Monumental further argues that *Riddle* is inapplicable because it involved a bad faith claim in connection with a conditional receipt of an application, while this case involves allegedly material misrepresentations discovered during the contestability period. According to Monumental, it rescinded coverage based on James' violation of KRS § 304.14.110. [Record No. 17, p.10] Finally, Monumental also requests that this Court grant summary judgment in its favor, *sua sponte*.

#### A. Policy Coverage

Kentucky Revised Statutes § 304.14-110 relates to statements in insurance applications. That section provides that,

> [a]ll statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

KRS § 304.14-110 (2006).

Kentucky courts have further noted that, "[w]hen an insured misrepresents material facts on the application, the insurer is justified in denying coverage and rescinding the policy." *Hornback v. Bankers Life Insurance Co.*, 176 S.W.3d 699, 705 (Ky. App. 2005). "The rule is that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Cook v. Life Investors Ins. Co. of Am.*, 126 Fed. App'x 722, 724 (6th Cir. 2005) *(quoting Mills v. Reserve Life Insurance Co.*, 335 S.W.2d 955, 958 (Ky. 1960)).

However, "where an application is made out entirely by the agent of the insurer from his own knowledge, or fraudulently, and the insured, acting in good faith, signs the application

without reading it or without knowledge of its contents, the company will be estopped to rely upon the alleged false statements contained therein." *Id*. (*quoting Metropolitan Life Ins. Co. v. Trunick's Admisitrator*, 246 Ky. 240 (Ky. 1932)). Further, "if the insurer's agent, by misleading statements, induces the insured to make false answers and the latter acts in good faith, the insurer is bound. The question whether or not an applicant was, through ignorance and good faith, misled by the agent into believing that his answers were truthful, is for the jury to decide." *Jarvis v. Monumental Life Ins. Co.*, 2005 U.S. Dist. Lexis 29210 *8 (6th Cir. Nov. 21, 2005) (*quoting Pennsylvania Life Ins. Co. v. McReynolds*, 440 S.W.2d 275, 279 (Ky. 1969)).

In the present case, the Plaintiff relies on the Sixth Circuit's decision in *Estate of Riddle v. Southern Farm Bureau Life Insurance Co.*, 421 F.3d 400 (6th Cir. 2005). However, Monumental accurately points out that *Riddle* involved a conditional receipt of an insurance application, which is distinct from the two-year contestability clause in the insurance contract at issue in the present case. Under Kentucky law, a conditional receipt requires a good faith determination of the applicant's insurability, regardless of whether the applicant was actually insurable. *See Riddle*, 421 F.3d at 409; *Investors Syndicate Life Ins. & Annuity Co. v. Slayton*, 429 S.W.2d 368, 370 (Ky. App. 1968). In contrast, a claim for bad faith such as that asserted in the current case is governed by *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), and requires that the insurer be obligated to pay under the terms of the policy.

In *Riddle*, the Sixth Circuit upheld the district court's denial of judgment as a matter of law and held that, in the context of a conditional receipt, a claim for bad faith could succeed even if the insurer could have denied the application in good faith. *Riddle*, 421 F.3d at 409. In that

case, Riddle applied for life insurance, paid the first month's premium, and received a conditional receipt. He died less than one month later, and the insurance company ultimately denied coverage after *extensively* reviewing the application. The district court denied the parties' motions for summary judgment, as well as the insurance company's motion for judgment as a matter of law. The bad faith claims were tried before a jury, and the jury returned a verdict for the full amount of the policy. The insurance company then appealed, arguing that the jury should have determined that Riddle was insurable in order to find the insurance company liable for bad faith and that there was not sufficient evidence of bad faith to warrant submission to the jury. The Sixth Circuit rejected both arguments and held that "[u]nder Kentucky law, it is irrelevant whether the defendant could have denied Riddle's application in good faith if the evidence shows that the defendant, in fact, reviewed the application in bad faith." *Riddle*, 421 F.3d at 409.

Monumental contends that *Hornback v. Bankers Life Insurance Company*, 176 S.W.3d 699 (Ky. App. 2005), is more analogous to the instant case. In that case, the Hornbacks purchased a truck from a dealership and included a credit life and disability insurance policy with the financing. The employee of the dealership read the Hornbacks the questions and filled-in the answers for them. However, the Hornbacks answered falsely to a question concerning heart disease in the past five years and the insurance company denied coverage. Mr. Hornback had suffered a heart attack six years prior to filling-out the application and had been undergoing follow-up appointments, maintenance and treatment for chest pains since that time, as well as a being diagnosed with multivascular coronary artery disease within the past five years. The

Hornbacks claimed that they told the employee of the dealership about some of this information, but that they did not believe that it amounted to "heart disease" within the meaning of the application. The Hornbacks further claimed that they did not read the application before signing it, although no one prevented them from doing so. The trial court granted summary judgment in favor of the insurance company, and the Hornbacks appealed.

The Kentucky Court of Appeals held that the application was not ambiguous and that the Hornbacks were bound by their answers. In particular, that court stated,

> the Hornbacks cannot argue that their answers accurately reflect Gale's heart condition. Additionally, although the Hornbacks claim they did not read the application before they signed it, they also acknowledge that no one stopped them from reading it.
>
> . . . In short, whether they read the application or not, the Hornbacks are held to have actual or constructive knowledge of its contents. Further, by signing the application, the Hornbacks adopted the answers as their own. Thus, we conclude that the circuit court properly determined that the Hornbacks had made misrepresentations that were material to the insurer's acceptance of the risk and that there was no fact issue in this regard.

*Hornback*, 176 S.W.3d at 704. The court in *Hornback* further noted that, "[w]hen an insured misrepresents material facts on the application, the insurer is justified in denying coverage and rescinding the policy." *Id*. at 705 (*citing State Farm Mut. Auto. Ins. Co. v. Crouch*, 706 S.W.2d 203, 206 (Ct. App. Ky. 1986); KRS § 304.14-110).

Here, Monumental claims that it denied coverage pursuant to KRS § 304.14-110 due to material misrepresentations in the application that would have made James uninsurable if the information had been disclosed. Monumental further contends that James signed the application and, therefore, is bound by his answers under the Kentucky Court of Appeals decision in

*Hornback*. However, the Plaintiff contends that James informed Monumental's agent, Smith, of all pertinent information and that Smith filled-out the answers on a computer screen and did not give James an opportunity to review those answers.

The Sixth Circuit addressed a similar situation in *Cook v. Life Investors Insurance Company of America*, 126 Fed. App'x 722 (6th Cir. 2005). In *Cook*, the plaintiff purchased a life and disability insurance policy in connection with the purchase of an automobile. The plaintiff claimed that the dealership's agent had filled-out the form incorrectly and that she had signed the form without reading it. When coverage was denied due to the false answer, the plaintiff sued to enforce the policy. Applying Kentucky law, this Court held that the insurance company was entitled to summary judgment because the application contained a material representation and the plaintiff had signed it. The Sixth Circuit reversed this decision and held that a genuine issue of fact existed as to whether the agent entered a false statement on the insured's application without her knowledge.

> The *Cook* court noted that,
>
> In *Pennsylvania Life v. McReynolds*, the [Kentucky] court [of appeals] repudiated *Combs*' holding that false answers to application questions always constitute "a material misrepresentation regardless of who inserted them." 440 S.W.2d at 277. The court said,
>
>> "we no longer will place the full responsibility on the applicant . . . to see that the application is correctly filled out . . . Of course if the applicant knows that false answers are being put down he will be responsible for them." *Id*. at 279.
>
> Under *McReynolds*, the critical inquiry is whether an applicant for insurance acted in good faith when signing an application containing false answers placed there by an agent of the company. *See id.* In that case, the applicant gave the agent truthful information and signed the application (which contained false

> information) in reliance on the agent's expertise. *See id.* at 276. The court held that the issue of the applicant's good faith should be tried to a jury. *See id.* at 279.
>
> This court, in *Osborne v. American Select Risk Insurance Co.*, 414 F.2d 118, 122 (6th Cir. 1969), followed *McReynolds* in holding that an insurance company's entitlement to rescind a policy depends on whether its agent placed false answers in the application. The court held that a jury must decide whether the agent asked the applicant the questions at issue and whether the applicant answered in good faith. *See id.*
>
> . . . Under *McReynolds*, the presence of a material misrepresentation in Ms. Cook's insurance application does not compel a judgment in favor of Life Investors if a reasonable jury could find (1) that [the insurance agent] wrote the false answer to Question 2 and (2) that Ms. Cook signed the application in good faith.

*Cook*, 126 Fed. App'x at 725. The Sixth Circuit concluded that a genuine issue of material fact existed as to whether the agent, rather than the applicant, filled-out the application and whether the applicant "was aware of the false answer when she signed her insurance application." *Id.* at 725.

In the present case, as in *Cook*, a disputed issue of fact exists as to the agent's role in filling-out the application. *See Cook*, 126 Fed. App'x at 726 ("Where an application is made out entirely by the agent of the insurer from his own knowledge, or fraudulently, and the insured, acting in good faith, signs the application without reading it or without knowledge of its contents, the company will be estopped to rely upon the alleged false statements contained therein.") (citations omitted). And unlike the plaintiffs in *Hornback*, the Plaintiff claims that James told the agent all the relevant information. *See Hornback*, 176 S.W.3d at 704 (noting that "the Hornbacks cannot argue that their answers accurately reflect Gale's heart condition").

Accordingly, the Sixth Circuit's decision in *Cook* offers the controlling instruction in the instant case.

The Plaintiff contends that Monumental's agent, Smith, was aware of the hospitalization and any alleged psychiatric problems from which James' suffered. In her affidavit in support of her motion for summary judgment, the Plaintiff states that,

> 13. Sue Smith asked questions to James Glenn Jones in a very fast and rapid manner, and coached him as to his answers, and then Sue Smith x'ed in the answers, on her lap-top computer screen, knowing full well the situation (health and otherwise) of James Glenn Jones.
>
> 14. After the completion of the questionnaire, where it was shown to be signed, it was not given to be reviewed.

[Record No. 16] Based on these alleged facts, a reasonable jury could conclude that Smith falsely answered the questions and that James signed the application in good faith. Similarly, a reasonable jury could conclude from the allegations contained in Smith's affidavit that James falsely answered the questions and did not sign the application in good faith. Therefore, because a genuine issue of material fact exists, the parties' motion for summary judgment as to the policy coverage will be denied.

### B. Bad Faith

To prevail on her bad faith claims, the Plaintiff must establish that the insurer is obligated to pay the claim under the terms of the policy; the insurer lacks a reasonable basis in law or in fact for denying the claim; and the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard. *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993). "Liability for bad faith will arise only in those instances where an insurer acts with some degree

of conscious wrongdoing, reckless or in a manner which reveals an unjustified gamble at the stake of the insured." *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 434 (W.D. Ky. 1991), aff'd, 968 F.2d 1215 (6th Cir. 1992).

The Court has already determined that there is a factual dispute as to whether the insurer is obligated to pay the claim under the terms of the policy. As to the second element, it also appears that a genuine issue of material facts exists concerning whether James actually suffered or had ever been diagnosed with schizophrenia. Monumental claims that they denied coverage due to his "history of schizophrenia," but the Plaintiff claims that James was never diagnosed with the disease. As noted previously, the medical record submitted by Monumental does not contain such a diagnosis and actually appears to rule out the disease.

Further, although the Court is not convinced that the Plaintiff will ultimately be able to prove the third element of her bad faith claim (that is, that Monumental acted with conscious wrongdoing), this is an issue of intent that should be submitted to a jury. *See Jarvis*, 2005 U.S. Dist. LEXIS 29210 at *12. As the Sixth Circuit noted in *Jarvis*, "to survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing or recklessness on the part of the insurer." *Id*. at *11-12. The Plaintiff has submitted some evidence as to this element, including the extensive scrutiny of James' policy by Monumental, and its admission that they reviewed James' policy more closely than average. [*See* Record No. 16, p.6-7] Additionally, the Plaintiff points to the Sixth Circuit's analysis in *Riddle*, as discussed above, to demonstrate that such close scrutiny could lead a jury to conclude that Monumental

acted in bad faith. And because "issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties," the Court will deny the parties' motions for summary judgment on this claim as well. *See Jarvis*, 2005 U.S. Dist. Lexis 29210 at *12.

### IV.     CONCLUSION

Genuine issues of material fact exist as to both the policy coverage and the allegations of bad faith. Accordingly, it is hereby

**ORDERED** that the Plaintiff's Motion for Summary Judgment [Record No. 16] is **DENIED**. To the extent that the Defendant's Response to the Plaintiff's Motion for Summary Judgment also requests summary judgment in its favor, that motion [Record No. 17] is **DENIED**.

This 5th day of June, 2007.



Signed By:
*Danny C. Reeves* DCR
United States District Judge